IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELLIOT G.[1],

               Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

             Defendant.

Case No. 1:20-cv-1701-SI

OPINION AND ORDER

Betsy R. Shepherd, BETSY R. SHEPHERD, 425 Riverwalk Manor Drive, Dallas, GA 30132.
Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and, Renata Gowie, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Elliot G. seeks judicial review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying Plaintiff's application for Supplemental

---

       [1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order also uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under the Social Security Act (Act). For the following reasons, the Commissioner's decision is REVERSED AND REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI on October 10, 2017,[2] alleging disability beginning January 1, 2016. AR 13. Plaintiff's claim was denied initially on April 20, 2018, and again upon reconsideration on July 26, 2018. AR 104-08, 112-14. Plaintiff filed a written request for a hearing, which was held on October 11, 2019. AR 115-17, 134-56. Plaintiff was born on November 10, 1994, and he was 21 years old on the alleged disability onset date. AR 22. In a decision dated February 5, 2020, the ALJ found that Plaintiff was not disabled. AR 23. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review, making the ALJ's decision final. AR 1. Plaintiff seeks judicial review of the ALJ's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R.

---

[2] The ALJ identified the application date as October 10, 2017. AR 13. The application in the record is dated December 20, 2017. AR 171. This discrepancy is immaterial.

§ 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d

at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found

that Plaintiff had not engaged in substantial gainful activity after the application date,

October 10, 2017. AR 15. At step two, the ALJ found that Plaintiff had severe impairments of

Ehlers-Danlos syndrome, complex regional pain syndrome, postural orthostatic tachycardia

syndrome, depressive disorder, generalized anxiety disorder/obsessive compulsive disorder,

somatic symptom disorder, and posttraumatic stress disorder. *Id.* The ALJ found that those

medically determinable impairments significantly limit Plaintiff's ability to perform basic work

activities as required by Social Security Ruling (SSR) 85-28. *Id.* Also at step two, the ALJ

determined that the following claimed impairments were non-severe or non-medically

determinable: seizures, fibromyalgia, Lyme disease, tremors, celiac disease, and irritable bowel

syndrome. AR 15-16. At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or equaled the severity of impairments required in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

AR 16-17.

The ALJ next determined Plaintiff's RFC. The ALJ found Plaintiff to have an RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that he can never climb ladders, ropes, or scaffolds. AR 18. The ALJ found that Plaintiff can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. *Id.* The ALJ also found that Plaintiff can perform simple routine tasks, but cannot engage in timed production work, such as work on an assembly line. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 19.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work as a customer complaint clerk. AR 22. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found Plaintiff able to make a successful adjustment to other work that exists in significant numbers on the national economy, specifically as a mailing clerk, cashier, and house cleaner. AR 22-23. As a result, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ erred by applying the incorrect standard in considering the medical testimony of Plaintiff's treating physicians, improperly rejecting Plaintiff's subjective symptom testimony, improperly assessing lay witness testimony, and providing an improper hypothetical to the vocational expert. The Court addresses each argument in turn.

**A.  Testimony of Plaintiff's Treating Physicians**

    **1.  Legal Standards**

Plaintiff filed his application for benefits on October 10, 2017. AR 13. For claims filed on

or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must

evaluate medical opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer

"weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§ 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions

and state that the agency does not defer to any particular medical opinions, even those from

treating sources. The new regulations purport to eliminate the agency's "treating source rule,"

which gave special deference to certain opinions from treating sources. Instead, the ALJ

considers the "supportability" and "consistency" of the opinions, followed by additional sub-

factors, in determining how persuasive the opinions are. 20 C.F.R. § 416.920c(c). Supportability

is determined by whether the opinion is supported by relevant objective medical evidence, and

the source's explanation for the opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined

by how consistent the opinion is with other medical opinions and prior administrative findings.

20 C.F.R. § 416.920c(c)(2).

    The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 416.920c(b). The ALJ is not required to explain how he or she considered

other secondary medical factors, unless he or she finds that two or more medical opinions about

the same issue are equally well-supported and consistent with the record but not identical. 20

C.F.R. §§ 416.920c(b)(2)-(3). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Relying on *Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987), Plaintiff argues that the Ninth Circuit's requirement that the opinion of treating physician's be given greater weight did not stem from the 1991 agency regulation and thus is not superseded by the 2017 agency regulation expressly rejecting medical opinion hierarchy. *See Sprague*, 812 F.2d at 1230 ("The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual."). "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83. Plaintiff makes no argument that the rule in *Brand X* applies here.

Plaintiff asserts, however, that the Commissioner must give specific and legitimate reasons supported by substantial evidence in the record to discount a treating physician. That standard is required under the statutory "substantial evidence" requirement and not the regulatory framework of the hierarchy of medical opinions. The Commissioner does not dispute that substantial evidence must support the ALJ's decision. The Commissioner argues that because the new regulations eliminate the hierarchy of medical opinions that existed under the old regulations, the case law setting different requirements to reject medical opinions based on that hierarchy (such as "specific and legitimate reasons" for contradicted examining physicians) is now inapposite.

This issue was addressed by another district court:

> In 2017, the Commissioner issued new regulations governing how
> ALJs are to evaluate medical opinions. *See* Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

*Terry B. v. Acting Comm'r of Soc. Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021) (alterations and emphasis in original).

The new regulations require an ALJ to evaluate medical opinion evidence based primarily on consistency and supportability irrespective of whether a "treating," "examining," or "reviewing" source gave the opinion. That does not mean, however, that the ALJ does not need to provide specific and legitimate reasons for why the medical opinion is or is not consistent with or supported by the evidence. *See Carrie R. v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) ("The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so. . . . In other words, while the new regulations eliminate the previous hierarchy of medical opinion

testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." (citations omitted)). Until the Ninth Circuit provides further guidance on this issue, the Court agrees that the ALJ must still provide specific and legitimate reasons in analyzing medical opinions under the new regulations.[3]

### 2. Jennifer Wabin, M.D.

Plaintiff challenges the ALJ's conclusion that Dr. Wabin's opinion was not persuasive, because of the inconsistencies between her opinion and her treatment notes showing benign findings. Substantial evidence supports the ALJ's conclusion that Dr. Wabin's opinion is inconsistent with and not supported by her treatment notes. The ALJ noted that Dr. Wabin's treatment notes described that Plaintiff presented "with intact attention/concentration, normal speech, normal gait, with some smiling, and as calm and cooperative with only mild psychomotor agitation at times." AR 21. Plaintiff asserts that the ALJ did not offer sufficient reasons to discount Dr. Wabin's opinion that Plaintiff would be absent for more than four days a month. The ALJ did, however, explain that the limitations Dr. Wabin identified are inconsistent with her treatment notes, which described Plaintiff in a relatively normal, attentive state, and the relatively benign mental examinations. *Id.* Inconsistencies between a doctor's opinion and treatment notes is a sufficiently specific and legitimate reason to reject a medical opinion. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Thus, the ALJ provided a specific and legitimate reason supported by substantial evidence to reject Dr. Wabin's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between

---

[3] At this time, the Court expresses no opinion about the validity of the other standards for reviewing medical evidence previously established by the Ninth Circuit such as the "clear and convincing" standard for considering uncontradicted evidence by a treating physician.

treatment notes and a treating provider's opinions may constitute an adequate reason to discredit

the opinions of a treating physician or another treating provider.").

### 3. Matthew McCaskill, D.O.

Plaintiff argues that the ALJ erred in failing to provide specific and legitimate reasons for

discounting Dr. McCaskill's opinion. Specifically, Plaintiff argues that the ALJ erred in

discounting Dr. McCaskill's opinion regarding Plaintiff's full-body convulsions, Plaintiff's need

for a service animal, and the number of absences Plaintiff would have each month. The ALJ

explained that the record includes no evidence of the kind of full body convulsions described by

Dr. McCaskill and that, due to that lack of evidence, the record does not support Dr. McCaskill's

assessment of how many days Plaintiff would miss in a month. AR 20. The ALJ found that the

extreme degree of limitations Dr. McCaskill described was not supported by any evidence in the

record. *Id.* Although Dr. McCaskill provided some information regarding Plaintiff's full-body

convulsions, the ALJ noted that the frequency and type of these convulsions is inconsistent

throughout the record. *Id.* "The ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is . . .  inadequately supported by clinical findings." *Bayliss v.

Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957

(9th Cir.2002)). Substantial evidence supports the ALJ's decision finding that Dr. McCaskill's

opinion regarding Plaintiff's limitations—including the number of absences Plaintiff might

have—is not persuasive.

Dr. McCaskill also noted that Plaintiff requires the use of a service dog. AR 2026. The

ALJ did not address in his opinion Plaintiff's alleged need for a service animal which, as

discussed in greater detail below, was described by Plaintiff and his partner, as well as

Dr. McCaskill. For the reasons stated below, the ALJ erred in failing to consider Plaintiff's

alleged need for a service animal.

### 4.  John Malleis, M.D.

Substantial evidence supports the ALJ's conclusion that Dr. Malleis' opinion is inconsistent with and not supported by the record. The ALJ found that Dr. Malleis' opinion was not persuasive because it indicated a disability onset of age nine, despite the fact that Plaintiff completed high school and was able to sustain full time work for a period of time. AR 20. Additionally, the ALJ found that Dr. Malleis' reports of vision issues and daily joint dislocations were not supported by the record. AR 21. The ALJ noted that the record contained no indication that Plaintiff had persistent complaints or diagnoses of any vision issues whatsoever. *Id.* Likewise, the ALJ found that Dr. Malleis' conclusion that Plaintiff has a complete inability to perform any postural activities was inconsistent with the record—in particular, the ALJ pointed to Plaintiff's ability to ambulate independently and to drive. *Id.* These constitute specific and legitimate reasons supported by substantial evidence to reject Dr. Malleis' opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that an ALJ properly discounted a treating physician's opinion for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record" as to the basis for the opinion).

## B.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th

Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding that "[a] lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, the ALJ noted that Plaintiff's "partner completed third party function reports with similar responses as" Plaintiff, and that "the objective medical evidence does not support the degree of restriction described by either source." AR 18. An ALJ may not reject lay witness

observations merely because they are not supported by the medical evidence in the record. *See Diedrich*, 874 F.3d at 640.

Similarly, the ALJ found of little evidentiary value Plaintiff's mother's statement, which focused on Plaintiff's alleged seizure disorder. *Id.* In declining to credit Plaintiff's mother's statement, the ALJ stated that "[a]s discussed previously, the medical evidence shows significant inconsistencies regarding the nature of and limiting effects of such events." AR 18. The ALJ previously had found that the medical evidence was inconsistent or lacked specificity. *See* AR 20 ("The record does not include evidence of observed 'full body convulsions[.]'"); AR 21 (describing that Plaintiff's reported insomnia is inconsistent with his treating physician's reports of Plaintiff as "present with intact attention/concentration, normal speech, normal gait, with some smiling, and as calm and cooperative with only mild psychomotor agitation at times"). Plaintiff's mother's statement, however, provides some of the specificity and corroboration the ALJ identified as missing from the medical evidence. As described by the Ninth Circuit, that is why the different perspective of lay witnesses who observe Plaintiff's symptoms in different contexts can be beneficial. *Diedrich*, 874 F.3d at 640. The ALJ's statement that these lay witness accounts were not consistent with the medical evidence is not sufficient to disregard those statements, particularly where one reason for discounting the medical evidence was lack of specificity or corroboration that can be provided by a lay witness.

Additionally, Plaintiff's partner described in multiple instances Plaintiff's need for a service animal. AR 251, 271, 276. This need was also described by Plaintiff himself, AR 52, as well as by Dr. McCaskill, AR 2026. Nowhere in the ALJ's opinion did he address Plaintiff's alleged need for a service animal. The Court finds that the ALJ erred in evaluating the lay witness testimony.

### C.  Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[4] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

      The ALJ concluded that, at the first step, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19. The ALJ determined, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Specifically, the ALJ found that Plaintiff's assertion that he had 10 to 15 medical appointments per month was not consistent with the treatment records, which indicated 30 visits in 2017, 44 visits in 2018, and 22 visits in 2019, through September of that year. *Id.* The ALJ also found that, despite Plaintiff's claim that he has daily dislocations of his joints, there were no instances of dislocation observed on examination. *Id.* The ALJ noted that there were inconsistencies concerning Plaintiff's alleged inability to eat "much of anything" and his tracked weight, his claims of eating only cheese while he claimed lactose intolerance, and that although Plaintiff alleged being injured in falls due to syncope, the medical evidence did not document any such events. *Id.* The ALJ also observed that although Plaintiff consistently reported depression, anxiety, and trauma symptoms, his "counselor regularly cited a positive mood" and the report issued following a psychological examination specifically noted that Plaintiff's results were "inconsistent with patient's report." *Id.*

      Plaintiff does not specifically dispute the inconsistencies found by the ALJ but argues that the reduced level of doctor visits cited by the ALJ would still require a finding of disability due to the amount of work missed, while not addressing most of the other inconsistencies. The inconsistencies cited by the ALJ are not a credibility finding (*e.g.*, a finding that if Plaintiff made inconsistent statements, then none of his statements are to be believed), but are cited in a

discussion of the type and severity of Plaintiff's alleged impairments and resulting limitations.

Plaintiff argues that the ALJ discounted Plaintiff's alleged impairments in order to find that they

did not result in any work-related limitations, but Plaintiff's RFC contains several work-related

limitations.

Plaintiff also argues that the ALJ failed to consider Plaintiff's diagnosis of somatic

symptom disorder in considering his symptom testimony. The relevant listing provides as

follows with respect to somatic symptom and related disorders:

> These disorders are characterized by physical symptoms or deficits
> that are not intentionally produced or feigned, and that, following
> clinical investigation, cannot be fully explained by a general
> medical condition, another mental disorder, the direct effects of a
> substance, or a culturally sanctioned behavior or experience. These
> disorders may also be characterized by a preoccupation with
> having or acquiring a serious medical condition that has not been
> identified or diagnosed. Symptoms and signs may include, but are
> not limited to, pain and other abnormalities of sensation,
> gastrointestinal symptoms, fatigue, a high level of anxiety about
> personal health status, abnormal motor movement, pseudoseizures,
> and pseudoneurological symptoms, such as blindness or deafness.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B(6).

The ALJ did not fail to consider Plaintiff's somatic symptom diagnosis completely. The

ALJ found that Plaintiff's somatic symptom disorder was severe at step two. AR 15. The ALJ

also formulated Plaintiff's RFC with consideration of Plaintiff's "excess focus on somatic

symptomatology." AR 22. The ALJ, however, did not acknowledge Plaintiff's somatic symptom

disorder in considering Plaintiff's subjective symptom testimony. Rather, the ALJ merely stated

that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his]

symptoms are not entirely consistent with the medical evidence and other evidence in the

record." AR 19. Because somatic symptom disorder affects how a person experiences pain and

how symptoms of other disorders manifest, the ALJ erred in failing to address Plaintiff's somatic

symptom disorder in considering his subjective symptom testimony. *See, e.g.*, *Scott M. S. v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1043444, at *3 (D. Or. Mar. 4, 2020) (finding that the ALJ erred when he "wholly failed to recognize, let alone reconcile, how kinesiophobia and somatic symptom disorder played a role in both plaintiff's subjective experience of pain and manifestation of symptoms"); *see also John A. v. Saul*, 2019 WL 2616594, at *3 (W.D. Wash. June 26, 2019) (finding that the ALJ erred when he failed to consider the plaintiff's somatic symptom disorder and instead found that the plaintiff's "exaggerated symptoms" undermined the persuasiveness of the plaintiff's symptoms).

**D.  Hypothetical for Vocational Expert**

At step five, the burden shifts to the Commissioner to show that a claimant can perform other work that exists in significant numbers in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The ALJ can meet his or her burden, in part, by obtaining the testimony of a vocational expert (VE). Plaintiff challenges whether the specific jobs found by the VE can be performed based on Plaintiff's RFC, and whether the ALJ erred in finding that those jobs exist in sufficiently significant numbers. Because the Court has found that the ALJ failed properly to evaluate the lay witness testimony and Plaintiff's subjective symptom testimony with respect to somatic symptom disorder, the RFC and hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. Specifically, the Court notes that the VE discussed the effect of Plaintiff's alleged need for a service animal on the hypothetical, AR 57, but the ALJ did not discuss Plaintiff's alleged need for a service animal discussed by one of the lay witnesses or the VE's statements on how that would impact the hypothetical. A hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (citation omitted); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical

does not reflect all the claimant's limitations, then the testimony has no evidentiary value."
(simplified)); *see also Santos v. Colvin*, 2013 WL 5176846, at *6 (W.D. Wash. Sept. 12, 2013)
(holding that an ALJ committed reversible error in failing to discuss a plaintiff's alleged need for
a service dog, where there was "at least some evidence in the record that plaintiff's use of a
service dog is medically necessary"); *Kourtney L. v. Berryhill*, 2019 WL 3945251, at *3 (D. Or.
Aug. 21, 2019) ("On remand, the ALJ should perform the sequential analysis and resolve
conflicts in the medical record to determine whether plaintiff requires a service animal[.]").

**E.  Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to
remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d
1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the
agency for additional investigation or explanation, a court has discretion to remand for
immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-
1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award
benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been
improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security
Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this
Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether
the ALJ made a legal error and then reviews the record as a whole to determine whether the
record is fully developed, the record is free from conflicts and ambiguities, and there is any
useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).
Only if the record has been fully developed and there are no outstanding issues left to be
resolved does the district court consider whether the ALJ would be required to find the claimant

disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There are conflicts and ambiguities in the record that require further proceedings rather than an award of benefits, including with respect to Plaintiff's seizure disorder and need for a service animal. Thus, the Court remands for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge